IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| MARTIN OPERATING PARTNERSHIP L.P. | § § § | |
|---|---|---|
| v. | § | No. 4:11-cv-_____ |
| CPR MARINE, LLC | § § | ADMIRALTY |

## COMPLAINT

Plaintiff, Martin Operating Partnership, L.P. ("Martin") brings this action against defendant, CPR Marine, LLC ("CPR Marine"), and states as follows:

I.

### Jurisdiction and Venue

This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and FED. R. CIV. P. 9(h).

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and because the parties contractually agreed to venue in this District.

II.

### The Parties

Martin is a partnership created and existing under the laws of Delaware, with its principal place of business in Texas, and is the owner of the barges MMLP - 313 and MMLP -314 (the "Vessels").

CPR Marine, LLC is a limited liability company organized and existing under the laws of Delaware, and may be served through its Member, William L. Jones, 2416 Chuchura Road, Birmingham, Alabama 35244-3342.

III.

Facts

1.      On or about February 15, 2008, Martin entered into a Fully Found Charter with CPR Marine whereby CPR Marine contracted to charter two (2) approximately 28,700-barrel barges and a towboat to push them ("the Tow") from Martin.

2.      The barges MMLP-313 and MMLP-314 were newly constructed and in all respects seaworthy and fit to perform the services for which they were chartered.

3.      Under the charter, the Tow was hired to CPR Marine for a period of two (2) years commencing on or about February 15, 2008. The Tow was to carry dirty petroleum products excluding asphalt, vacuum tower bottoms or similar type cargoes, as directed by CPR Marine, between ports along the Mississippi River. Charter hire was to be paid at the rate of $9,500.00 per day plus the cost of fuel and lube oil.

4.      Upon conclusion of the charter, the Vessels were to be returned to Martin in the same good order and condition as when delivered to CPR Marine, ordinary wear and tear excepted. In addition, CPR Marine as Charterer was obligated to pay for any cleaning required at the conclusion of the charter, and charter hire remained due during time used for the cleaning.

5.      Prior to execution of the charter, Martin understood that CPR Marine had a long-term agreement with Valero Marketing and Supply Co. ("Valero") to purchase slurry out of Valero's Memphis, Tennessee refinery, and that the Tow would be carrying that product.

6.      In approximately May 2009, issues arose between CPR Marine and Valero, the result of which was that CPR Marine stopped taking deliveries of product

2

from Valero's Memphis facility. Thereafter, CPR Marine advised Martin it no longer could use the Tow, and breached the charter by failing to utilize the Tow for the balance of the Charter term, failing to pay charter hire, and in fact asking Martin to take the Tow back and charter it elsewhere.

7.      The Vessels had developed significant unpumpable cargo heels. This material was not normal cargo, but some type of residue that stubbornly collected in the bottoms of the Vessels.

8.      Notice was given to CPR Marine to clean the barges in accordance with the charter. CPR Marine failed and refused to clean the barges.

9.      Martin was unable to adequately market the Tow immediately, due to the presence of the significant heels.

10.     After unsuccessful attempts to have the Vessels cleaned in Louisiana, Martin moved the barges to Southwest Shipyard in Houston, Texas, where the cleaning was performed at significant expense, in excess of $650,000.00. Southwest Shipyard, which among other areas is expert in barge cleaning, reported that the heels in Martin's barges were the worst their crews had seen. Upon information and belief, one or more other towing/barge companies experienced similar ROB[1] issues with product loaded at the Valero Memphis facility.

11.     After CPR Marine anticipatorily breached the charter, Martin chartered the Tow elsewhere, both before and after the cleaning, through the end of the charter term in order to mitigate its damages.

---

[1] Acronym for "remaining on board," referring to material not pumped off during the discharge process.

3

12. From the time of CPR Marine's breach through the end of the charter term, Martin sustained damages for net unpaid charter hire, barge cleaning and miscellaneous expenses totaling $2,451,651.67, exclusive of interest and legal fees.

## IV.

### Breach of Contract

Martin repeats and re-alleges each and every allegation set forth in Section III as if fully set forth herein.

CPR Marine had a contractual duty to pay charter hire through the end of the charter term, and to pay to have the Vessels cleaned to a condition suitable to re-enter service.

CPR Marine breached this duty by failing to utilize the Tow to the end of the charter term, failing to pay charter hire, and failing to pay the cleaning charges.

**WHEREFORE,** Plaintiff Martin Operating Partnership, L.P. prays for the following relief:

1. That CPR Marine, LLC be served with a copy of this Complaint, and duly cited to appear and answer same;

2. That Martin have judgment against CPR Marine for not less than $2,451,651.67 for the following expenses:

   a. charter hire;

   b. cleaning charges; and

   c. miscellaneous expenses.

3. That Martin recover pre-judgment interest and attorneys fees and expenses; and

4

4.      That Martin have such other and further relief as the Court and justice may deem just and proper.

Respectfully submitted:

By: _____
F. William Mahley
State Bar No. 12836740
Federal I.D. 2863
Strasburger & Price, LLP
1401 McKinney, Suite 2200
Houston, Texas 77010-4035
713-951-5600 - Telephone
713-951-5660 - Facsimile
bill.mahley@strasburger.com

Attorney-in-Charge for Plaintiff,
Martin Operating Partnership, L.P.

OF COUNSEL:
STRASBURGER & PRICE, LLP
